CASE 86—INDICTMENT AGAINST MOLLIE WALKER FOR KEEPING A
    BAWDY HOUSE—FEB. 12.

# Walker v. Commonwealth.

APPEAL FROM HENDERSON CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS.   AFFIRMED.

CRIMINAL LAW—KEEPING A BAWDY HOUSE—EVIDENCE—REMARK OF
    COUNSEL.

Held:   1. On a trial for keeping a bawdy house evidence that the
    keeper took her women out walking or driving with her, and
    that the house was located near two public schools and a san-
    itarium, was admissible to show the gravity of the offense.
2   On a trial for keeping a bawdy house, evidence that the citizens
    had petitioned the keeper to leave the locality, and that she
    had continued her business as before, was competent on the
    question of her knowledge that she was violating the law.
3. On a trial for keeping a bawdy house, the remark of the Com-
    monwealth attorney that the keeper drives about the city with
    her trap and white lines, being based on the evidence, except
    in its reference to the white lines, is unobjectionable.

A. O. STANLEY AND J. S. POWELL, ATTORNEYS FOR APPELLANT.

L. C. FLOURNOY, N. P. TAYLOR AND N. B. HAYS, FOR COMMON-
    WEALTH.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellant was indicted and convicted of the offense of
keeping a bawdy-house. Her punishment was fixed at a fine
of $800. She complains that the court erred in admitting
incompetent evidence against her, and that the Common-
wealth attorney made a certain statement to the jury in his
concluding argument.

The Commonwealth proved by a number of witnesses that
the defendant kept a bawdy-house; that her reputation for

morality and chastity is bad; that the reputation of the women she kept was also bad; that the house was frequented by men and women of ill fame; and that it was in fact a bawdy-house seems from the cross examination of the witnesses to have been undisputed on the trial. The defendant offered no testimony, but, on the cross examination of the Commonwealth's witnesses showed that her house was the most quiet and orderly place of the kind in the city, and that no conduct out of the way was to be seen about the premises. On the other hand, the State was allowed to prove, over the defendant's objection, that the house was on a prominent street, not far from the sanitarium, and in view from it; also that it was near two of the schools of the city. The State also showed, over the defendant's objection, that the defendant was seen walking and driving on the streets of the city in company with the lewd women she kept in the house. A witness was permitted to make this statement: "I have seen men going into this place and coming out at all times of the day and night, in various stages of intoxication, and have seen hacks stop there day and night. I have often seen defendant take women of evil name and fame who lived with her and drive about the streets of the city with them, and have seen these women get out of her trap at her door, and enter her house in her company. The sanitarium is on Green, and this place is on Eighth, about a half a square above. The Seventh Street School is on the block below, the school being on the far side of Seventh from this house. It is almost opposite the colored school, that school being on the corner of Eighth and Elm; and this place is in the middle of the block between Elm and Green, on the same street. The house of Mollie Walker is only half a square from, and in full view of, the street car line that runs out Elm street to Atkinson's Park." Another witness said that it was almost

opposite the colored school. The State was also allowed to show that a petition had been presented to her, signed by citizens, asking her to move out. All this evidence was objected to. In arguing the case to the jury, the Commonwealth attorney said this: "She has been petitioned by the good citizens of Henderson to leave that locality. Instead, she drives about the city with her trap and white lines: If she must run such a place, let her not parade her nefarious calling in the face of schools and sanitariums." To this statement of the Commonwealth attorney she objected, and, her objection being overruled, excepted.

In 2 Bishop on Criminal Procedure, section 112, it is said: "A bawdy house being indictable because corrupting to the public morals, evidence is admissible that it is frequented by reputed strumpets and rakes, for by the character of such frequenters its business is advertised, and the intent of the keeper is evinced." Again, in section 116, it is said: "Where the other facts are sufficient, it will not justify the keeper to prove that the neighborhood was not disturbed." So, in 2 Robertson on Criminal Law, section 640, it is said: "The keeping of a bawdy house is a common nuisance, and a public offense, for the reason that its direct tendency is to debauch and corrupt the public morals and to disturb the public peace. But it is not an essential element of the offense that the immoral practices should be open to public observation, or that the public should be disturbed by noise."

As the jury have a wide discretion as to the punishment to be imposed, it is proper for the Commonwealth to show the character of the house kept by the defendant. If the house was a small affair, little frequented, and having few occupants, a less serious offense would be committed than if it was widely advertised, much frequented, and a powerful

agent for debauching and corrupting the public morals, for the thing aimed at is the protection of the public morals, and evidence which would properly show the corruption of the public morals, or the wide influence of the house thereon, would be properly received. A house kept quietly, with only two or three women in it, would be a much less grave public nuisance than one kept with a hundred, publicly blazoned forth and held up to public attention, so that the women might more successfully ply their calling. The evidence that the defendant took the women out walking with her, or driving in her trap, whereby she displayed them as truly as a merchant would his goods in a show window, was therefore competent. The location of the house near the two schools and the sanitarium made it a more certain menace to the public morals than if located away from the young, and not where those who, from youth and inexperience, are liable to be led astray, would be most likely brought in contact with it. The fact that the citizens had petitioned her to leave the locality, and that she had continued her business after this as before, was competent, at least, on the question of knowledge, for it showed that the defendant was not unadvised as to what she was doing, and that it was not a case where ignorance of intention to violate the law could be presumed. The argument of the Commonwealth attorney was based on the evidence which the court had admitted, except that we do not see anything in the bill of exceptions about her driving her trap with white lines, and that is immaterial.

We do not, therefore, see that there was any error of the court in the matters referred to.

Judgment affirmed.

Judge Paynter dissents.